The Chancellor.
This suit is upon a time policy, on the brig Champion, for twelve months, commencing on the 21st of January, 1835; average, if any, to be settled each passage. And the policy contains this special clause as to the continuance of the risk, upon which the controversy in the present suit arises: “ If at sea at the expiration of the term, the risk to continue, at the same rate of premium, until her arrival at the port of destination.”
There is nothing in the policy or in the proof to show where the brig was at the time of the execution of the policy, or in what particular business or trade she was then engaged; but *324 about eight months afterwards she was in New-York, and sailed, from there as a freight vessel, for St. Barts, Curacoa and Maracaibo, part of her cargo being destined for each of those places, and intending again to return to New-York. On her passage to St. Barts she sustained considerable damage, and after discharging the part of her cargo destined for that place, she went to St. Thomas, which was the nearest port where full repairs could be made. While there the master learned that Maracaibo was in a state of insurrection. And a cargo of coffee having been landed at St. Thomas, from a condemned vessel, destined for Philadelphia, he made an arrangement to return from Curacoa, after landing the rest of his cargo there, if he found it unsafe to proceed to Maracaibo, and to take the coffee on freight for Philadelphia; that arrangement, however, not to be binding unless he should return to St. Thomas within thirty days. The brig having completed her repairs left St. Thomas on the 4th December, 1835, and arrived at Curacoa on the 8th of that month; where she discharged the part of her cargo originally destined for Maracaibo, as well as that which was intended for Curacoa. She sailed from Curacoa on the 20th of December, for St. Thomas, in ballast, with the intention of taking the cargo of coffee which had been conditionally engaged at the latter place and proceeding to Philadelphia. But having encountered heavy storms on the passage, she did not arrive at St. Thomas until after the thirty days had expired; when it was found that another vessel had been engaged to carry on the coffee. The master then commenced taking in ballast with the intention of returning to Curacoa. But finding the brig was leaking badly, a survey was had on the 9th of January, and it was found necessary to strip her bottom and copper it anew. It was then determined to take in what freight could be procured there, as. soon as the repairs could be completed, and proceed to New-York. She was accordingly put up for freight for New-York as early as the 13th of January, 1836; and when her repairs were completed, the day after the twelve months expired, about half a cargo had been engaged. On the 25th of January she commenced taking in her freight which had been engaged; and on *325 the 31st of that month she sailed for New-York, but was totally lost on her passage. The question to be decided upon this state of facts is, whether the brig Champion was at sea on the 21st of January, 1836, within the true intent and meaning of this clause of the policy.
As the policy provides that if the vessel is at sea at the expiration of the twelve months, the risk shall continue until her arrival at the port of destination, the term at sea is necessarily placed in contrast with a port of destination. And if she was in one of her ports of destination, for any of the purposes of the voyage, at that time, she was not at sea so as to entitle the underwriters to an additional pro rata premium; and of course the risk was not extended beyond the twelve months. This is not a policy entered into with reference to any particular voyage, or to or from any specified ports or places ; but it is a general policy upon time, commencing upon a particular day, wherever the brig might be at that time, and covering all sea risks that she might incur during the twelve months, either by lying in port or sailing from port to port in any part of the world. The object of this special clause, therefore, could not have been intended to continue the risk until the brig -actually arrived at the port where her owner resided, if she happened to be absent from that port at the time the twelve months expired. For upon such a construction, if the brig had been at Baltimore on the 21st of January, 1836, she might have taken in a cargo upon the usual trading voyage by the way of Cape Horn and the Pacific, to the East Indies or China, and back by England to New-York. In fact there would be no termination of the risk until the brig was actually lost, or was sold by the assured, so long as she continued to carry freight from port to port without returning to New-York, where it is said the plaintiff resides.
The object of this clause in a general time policy is to my mind perfectly plain and sensible. The assured wishes to employ his vessel in such manner, and in the prosecution of such passages from port to port, or otherwise, as he may from time to time suppose will be most profitable to himself; without the necessity of taking out a new policy for each voyage, and run *326 ning the risk of losing his insurance by a deviation, if he happens to change his mind after the premium upon a particular voyage has been paid or secured. This he does by taking a general policy on time merely. And as the master of his vessel can generally communicate with him from any port to which she shall from time to time be destined in the prosecution of her business, in season to renew the policy, before the news of a subsequent loss will have arrived so as to prevent renewal, there is no necessity of continuing the risk where she is in such a port at the expiration of the period mentioned in the time policy. But if the vessel was at sea when the time expired, especially if she had been long absent from the last port to which she had been previously destined, the owner would not get the requisite information as to the state of the vessel to enable him to obtain a new policy until she arrived at her next port of destination. And the object of this special clause was to provide for such a case. The difference between the two cases may be illustrated by that which we are now considering. Here the brig sailed from Curacoa to St. Thomas, as one of her ports of destination, expecting to arrive there within the thirty days, and to take from there a full freight for Philadelphia. If she had not met with the storm, which disabled her, she would have been on her voyage to Philadelphia, as her next port of destination, at the time the twelve months expired. And being at sea, the owner might not be able to get the requisite information as to her situation, to obtain a new policy, until she arrived at that port. But being detained at St. Thomas, which was her last port of destination previous to the expiration of the stipulated time for the termination of the risk, the master was enabled to write from there, to his owner, on the 13th of January; showing the situation of the vessel, and that she was put up for freight, for New-York, as soon as her repairs should have been completed, and also stating facts from which it was apparent that she would not be able to leave that port previous to the 21st of the month, when the risk would terminate. That letter, which contained all the requisite information to enable the owner to renew the policy on time, or to insure the brig upon the particular voyage *327 from St. Thomas to New-York, actually arrived in Philadelphia the same day she sailed on that voyage, and was received by the plaintiff on the third of February. So that he had ample time to have renewed his insurance before any news of the subsequent disaster was received. For the brig was not lost until more than a fortnight after the letter of the 13th of January had been received by him in New-York.
Neither of the cases cited by the plaintiff’s counsel, from the reports of Massachusetts, are like the present. And the actual decisions in those cases cannot well be questioned, though the language of the judge who delivered the opinion of the court in one of them went much further than was called for by the facts in the case, or the terms of the policy. In Wood v. The New England Marine Insurance Company, (14 Mass. Rep. 31,) the special clause, in case the vessel should be at sea at the expiration of the specified time, continued the risk until her arrival at a port of discharge. The vessel sailed from Beverly for Amsterdam within the twelve months specified in the policy, and was captured and carried into Bristol, and was after-wards released and proceeded on her voyage to Amsterdam. But she was taken by a French privateer before she arrived there. The loss occurred, therefore, before she reached her port of discharge; whether that port was Amsterdam to which she was bound when she was forcibly carried into Bristol, or Beverly from whence she sailed upon that particular voyage. But the twelve months having expired while she was detained at Bristol, the question arose whether she was to be considered as then at sea within the intent and meaning of the policy. And the court decided that she was.
Where a vessel is driven by stress of weather into a port of necessity, or is captured and carried there by superior force, she is undoubtedly at sea in reference both to her last port of departure, and to her port of destination at the time the disaster occurred; and she certainly is so in reference to her intended port of discharge. I think that case, therefore, was rightly decided, and in conformity with the probable intention of the parties to the 'contract. But if Amsterdam was intended to be *328 a port of discharge of that vessel, and the twelve months had expired after she had arrived in safety at that port, I cannot concur in the opinion of the learned chief justice that this clause of the policy would have continued the risk until the return of the vessel to the port from whence she last sailed in the United States. For the language of the policy continuing the risk only until she arrives at a port of discharge, shows that the parties could not have contemplated any such continuance beyond the specified time, if she was in fact in any port of discharge when the time expired. In other words, the vessel would not then be at sea within the intent and meaning of this clause of the policy.
In the case of Bowen v. The Hope Insurance Company, (20 Pick. Rep. 275,) the terms of the special clause were, that if the vessel should be at sea when the year expired, the risk was to continue until her arrival at her port of destination and discharge, at a pro rata premium; and in another policy the words “ on a passage ” were substituted for at sea. The vessel had actually started on her voyage, but had not gotten into the broad ocean, when the time expired. And it was very properly held that she was not at a port of destination and discharge; but was at sea and on her passage to such port when the specified time expired, and that the risk therefore continued until her arrival at such port.
In the case of The Union Insurance Company v. Tysen, (3 Hill’s Rep. 118,) the special clause extended the risk until the arrival of the vessel at her port of destination in the United States. And the court having decided that she had started on her voyage from Rotterdam to Newcastle upon Tyne, when the term specified in the policy terminated, the risk was continued to her port of destination in the United States, notwithstanding she continued her voyage to Newcastle before she proceeded to the United States. But there is nothing in that-decision which in the least conflicts with the decision of the same court in the case now under consideration. Here the risk was not extended to the port of destination of the brig in the United States, even if she was at sea at the termination of the twelve months, but *329 until she arrived at her port of destination. Her last port of destination when she was at sea after she left Curacoa was St. Thomas; for she intended to go there for the cargo of coffee. But whether her next port of destination would be Philadelphia, or Curacoa, or New-York, depended upon contingent events. She was therefore in one of her ports of destination at the expiration of the twelve months; and not at sea within the terms or the true intent and meaning of this special clause in the policy.
I have no doubt, therefore, that the decision fff the court below was right: and that the judgment opght to be affirmed,
Senator Bockee delivered an opinion in favo>: of affirming the judgment of the supreme court, and Senators Hopkins and Putnam in favor of reversing it.
"On the question being put, “Shall this judgment be reversed1?” the members of the court voted as follows:
For reversal: Senators Dickinson, Ely, Faulkner, Hard, Hopkins^ Lawrence, Mitchell, Putnam and Rhoades—9.
For affirmance: The President, The Chancellor and Senators Bartlit, Bockee, Denniston, Deyo, Dixon, Franklin, Lott, Platt, Porter, Root, Scovil and Wright—14